UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE RAY,

                        Plaintiff,            Civil Action No. 21-10228

v.                                    Thomas L. Ludington
                                    United States District Judge

COMMISSIONER OF            David R. Grand
SOCIAL SECURITY,          United States Magistrate Judge

                        Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 19)

Plaintiff Clarence Ray ("Ray") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 16, 19), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Ray is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 19)** be **GRANTED**, Ray's Motion for Summary Judgment **(ECF No. 16)** be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's

decision be **AFFIRMED**.

## II.   REPORT

### A.   Background

Ray was 42 years old at the time of filing his applications on May 2, 2019. (PageID.303, 310).[1] [2] At 6'0" tall, he weighed approximately 221 pounds during the relevant time period. (PageID.127). He completed high school and obtained certifications for hospitality management and film/television broadcasting. (PageID.81). He currently lives alone in an apartment. (PageID.96). Previously, Ray worked as a server, bartender, invoice specialist, and head waiter floor supervisor. (PageID.64, 82-87, 382). Ray's alleged disabling conditions include sciatic nerve pain, depression, HIV, bipolar disorder, and anxiety disorder. (PageID.373). He alleged an amended disability onset date of April 1, 2019. (PageID.79).

After Ray's applications for SSI and DIB were denied at the initial level on October 14, 2019 (PageID.209, 217), and upon reconsideration on January 6, 2020 (PageID.228-41, 243-54), he timely requested an administrative hearing, which was held on August 6, 2020, before ALJ Ramona L. Fernandez (PageID.75-105). Ray, who was represented by attorney Wesley J. Lamey, testified at the hearing, as did vocational expert ("VE") LuAnn Castellana. (*Id.*). On August 20, 2020, the ALJ issued a written decision finding that Ray is not disabled under the Act. (PageID.53). On December 3, 2020, the Appeals Council

---

[1] Standalone citations to "PageID. __" are all to the administrative transcript in this case, which can be found at ECF No. 10.

[2] Ray had filed previous applications for these benefits on May 19, 2015, which were denied by ALJ Janet Alaga-Gadigian on February 28, 2017. (PageID.109-121).

denied review.  (PageID.45-50).  Ray timely filed for judicial review of the final decision

on February 1, 2021.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Ray's

medical record, function and disability reports, and testimony as to his conditions and

resulting limitations.  Instead of summarizing that information here, the Court will make

references and provide citations to the transcript as necessary in its discussion of the

parties' arguments.

**B.**     **The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability."

*See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in

relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to

be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.

> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of the
> impairments listed in the regulations, the claimant is conclusively

3

> presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Ray is not disabled under the Act. At Step One, the ALJ found that Ray had not engaged in substantial gainful activity since the amended alleged onset date of April 1, 2019. (PageID.58). At Step Two, the ALJ found that Ray had severe impairments of degenerative disc disease of the lumbar spine, status-post right-sided microdiscectomy at L5-S1, lateral meniscus tear of the right knee, major depressive disorder, generalized anxiety disorder, and bipolar disorder. (PageID.59). At Step Three, the ALJ found that Ray's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.59-60).

The ALJ then assessed Ray's residual functional capacity ("RFC"), concluding that

he is capable of performing light work, with the following additional limitations:

> he can sit for 6 of 8 hours; he can stand and/or walk for 4 of 8 hours; he can frequently balance; he can occasionally climb, stoop, kneel, crouch, or crawl; he can never use ladders, ropes, or scaffolds; he is limited to simple tasks that can be learned on the job within 30 days and do not involve teamwork; he can have occasional, brief, and superficial interaction with co-workers, the general public, or supervisors; and he is limited to routine changes with simple decision making.

(PageID.61).

At Step Four, the ALJ found that Ray is unable to perform his past relevant work as a server, bartender, and head waiter floor supervisor. (PageID.64). At Step Five, the ALJ found, based in part on the VE's testimony, that given Ray's age, education, work experience, and RFC, he was capable of performing light unskilled work as an assembler, inspector, and hand packager, or in the alternative, even if the RFC were further reduced to the sedentary exertion level, he was capable of working as a sorter, assembler, and office clerk. (PageID.65-66). As a result, the ALJ concluded that Ray was not disabled under the Act. (PageID.66).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148,

1154 (2019) (internal citations omitted).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted).  Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D.    Analysis

In his motion for summary judgment, Ray argues that the ALJ erred in: (1) determining that his impairments do not meet or medically equal Listing 1.04(A); and (2) failing to find that his cervical spine impairment was a severe impairment.  (ECF No. 16, PageID.1575-83).  These arguments are addressed in turn below.

> *1.    Substantial Evidence Supports the ALJ's Determination that Ray's Impairments Do Not Meet or Medically Equal Listing 1.04(A)*

Ray first argues that the ALJ erred in finding that his impairments did not meet or medically equal Listing 1.04(A).  Relevant here, the ALJ found that:

> Attorney Lamey specifically asserted that the claimant's lumbar spine disorder satisfies the criteria of listing 1.04(A), which requires resulting compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and positive straight-leg raising test in the sitting and supine positions.  ***However, the requisite evidence of motor loss accompanied by sensory or reflex loss is not present in the record.***  It is noted that Attorney Lamey cited a report from May 2019 where an emergency department resident identified decreased sensation over the medial distal right lower extremity compared to the left and decreased strength in the right lower extremity compared to the left secondary to pain upon initial evaluation, but later that day his sensory system was found by an internal medicine physician to be grossly intact on neurological examination with power and tone that looked normal for his age.  Consulting neurological and physical medicine rehabilitation specialists also indicated that he had full muscle strength grades in both lower extremities at that time.

(PageID.59) (emphasis added and citations omitted).

In challenging this determination, Ray argues that the ALJ's stated reasons were "faulty" and that the ALJ "disregards" evidence of weakness, sensory loss, and reflex loss

in the lower extremities.  (ECF No. 16, PageID.1578).  When challenging an ALJ's Step Three findings, it is incumbent upon the claimant to "point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing ... .  Absent such evidence, the ALJ does not commit reversible error by failing to [properly] evaluate a listing at Step Three."  *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014); *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("even if these reasons failed to support the ALJ's step-three finding, the error is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment ... .").

During the relevant period, Listing 1.04(A) required claimants to establish the following:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, subpt. P, app. 1 § 1.04(A) (effective May 21, 2020 to April 1, 2021).

The Commissioner argues in response that "[s]ubstantial evidence supports the ALJ's finding that [Ray] did not have the requisite motor and sensory deficits" because "the ALJ's discussion of the objective evidence reveals [that] while [Ray] at times displayed some of the criteria individually, he did not experience the criteria

8

simultaneously and/or over a consistent period."  (ECF No. 19, PageID.1597-98).  The Court concurs with the Commissioner on this point.

Here, substantial evidence supports the ALJ's finding that "the requisite evidence of motor loss accompanied by sensory or reflex loss is not present in the record." (PageID.59).  While Ray contends that Listing 1.04(A) "does not specify a specific number of times these findings need to occur, just that evidence exists in the record showing those findings" (ECF No. 16, PageID.1578), Listing 1.00(D) governing Musculoskeletal Disorders makes clear that "[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."  20 C.F.R. Pt. 404, subpt. P, app. 1 § 1.00(D); *see also* Soc. Sec. Acquiescence Ruling 15-1(4), 2015 WL 5564523, at *57420 ("[O]ur policy requires that for a disorder of the spine to meet listing 1.04A at step three [], the claimant must establish the simultaneous presence of all the medical criteria in paragraph A.  Once this level of severity is established, the claimant must also show that this level of severity continued, or is expected to continue, for a continuous period of at least 12 months."); *Davis v. Comm'r of Soc. Sec.*, No. 18-13576, 2019 WL 6208732, at *8 (E.D. Mich. Oct. 31, 2019) ("[T]he intermittent findings cited by [claimant] do not satisfy [1.04(A)'s] listing criteria and the ALJ's conclusions remain supported by substantial evidence."), *report and recommendation adopted*, No. 18-13576, 2019 WL 6173802 (E.D. Mich. Nov. 20, 2019). As discussed below, substantial evidence in the record supports the ALJ's finding that Ray did not establish the requisite presence of motor loss accompanied by sensory or reflex loss

to meet or medically equal Listing 1.04(A).[3]

To start, the record contains numerous physical exam findings throughout the relevant period reflecting that Ray regularly had intact sensation and normal range of motion, strength, and reflexes in his lower extremities.   For example, an emergency department ("ED") treatment note on January 10, 2019, reflects exam findings of "[n]ormal range of motion" and "normal muscle tone."  (PageID.656).  A physical exam on April 4, 2019, indicates similar findings of "normal range of motion," negative straight leg raising ("SLR"), "[i]ntact sensation to fine touch bilaterally," "2+ patellar reflexes present bilaterally," and "normal muscle tone."  (PageID.555).  Within a day Ray was "[n]egative for back pain and neck pain," and was "cleared to go home" with "[n]o need for any surgical intervention."  (PageID.550, 552).  While a subsequent exam on April 10, 2019, found tenderness, pain, and spasm of the lumbar back, Ray still exhibited "normal range of motion," "normal strength," and "[n]o sensory deficit."  (PageID.699).  Another exam later that day also found "[s]trength is equal bilaterally no referred back pain with leg raising," "[n]o significant point tenderness to palpation along the back ... turns well," and

---

[3] Ray argues that "there is clearly a preponderance of evidence that supports the argument that [his] lumbar spine impairment medically equals the Listing."  (ECF No. 16, PageID.1578).  But to the extent he suggests that the Court should apply a preponderance of the evidence standard to its review of the ALJ's equivalency analysis, he is misguided.  While the ALJ must base decisions on the preponderance of the evidence in the hearing record pursuant to 20 C.F.R. § 404.953 and SSR 17-2p, this Court "is bound by 42 U.S.C. § 405, which mandates that 'the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....' Accordingly, the court must apply the substantial evidence standard to the review of the factual basis of the ALJ's decision on equivalency."  *Davis*, 2019 WL 6208732, at *6 n.2.  And, the law is clear that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip*, 25 F.3d at 286.

"[n]o focal motor or sensory deficits." (PageID.675; *see also* PageID.1007 ("lower extremity motor and sensory examination is unremarkable"). On April 26, 2019, Ray reported no muscle weakness or "[n]umbness in extremity," and an exam found "no discrete weakness in the [] lower extremities" and "[n]o sensory loss." (PageID.624).

On May 22, 2019, Ray went to the ED to report difficulty ambulating due to back pain, as well as numbness (but no weakness) in the right leg, and a physical exam found he was "[u]nable to ambulate 2/2 pain, positive right straight leg test, ttp over lumbar spine, and right paraspinal tenderness," as well as "[d]ecreased sensation over medial distal right LE compared to left, decreased strength in right LE compared to left 2/2 pain." (PageID.693, 696).[4] But later that *same day*, subsequent physical exams found that Ray's sensory system was "grossly intact," his "[p]ower and tone look normal for age," his SLR was negative, his reflexes were "2+ symmetric throughout bilateral upper/lower extremities," his sensory function was "[g]rossly intact to light touch in all extremities," he had "[n]ormal stance and steady gait," and his musculoskeletal muscle bulk and tone were "normal." (PageID.698-99, 705, 710). Ray indicated a desire to return home and he was discharged the same day as his admission. (PageID.700). Treatment notes one week later on May 30, 2019, reflect that Ray "denie[d] any numbness or tingling in the leg" and reported that he "has been ambulatory," and while a physical exam found some "[l]imited strength in the right lower extremity due to pain," he still had "4+ out of 5 strength, both

---

[4] A record from this visit states, "[p]rior to admission, [Ray] was independent with basic and advanced ADLs and mobility with use of no DME [durable medical equipment]," and "[w]as driving." (PageID.703).

proximal and distal muscle groups," "Normal ROM [range of motion]," and "normal" sensory and motor function.  (PageID.787, 789).

A June 4, 2019 "ED Physician Note" found that Ray's neck had no tenderness, that his back was "[n]ontender," with "[n]ormal range of motion," and [n]ormal alignment," and that his musculoskeletal exam revealed a normal range of motion with 4+ out of 5 strength.  (PageID.781).  Ray continued to report no muscle weakness, neck stiffness, or "numbness in extremity" on June 6, 2019, and a concurrent physical exam found that he "shows no discrete weakness in the upper and lower extremities," he had normal "muscle bulk and tone," he had a muscle strength grade of "BLE 5/5," he demonstrated "[n]o sensory loss," his senses were "grossly intact to light touch in all extremities," and his reflexes were "2+ symmetric throughout bilateral upper/lower extremities."  (PageID.940, 942).  Ray had similar exam findings three days later on June 9, 2019, which indicated "normal strength," "no sensory deficit," muscle strength "5/5 b/l LE's," "no gross motor deficits," and normal range of motion in the neck.  (PageID.923, 953).  On June 20, 2019, he continued to deny any neurological "weakness," "abnormal balance," or "decreased range of motion," and an exam found "bilateral upper and [] lower extremities 5/5 all strengths," "sensation intact to dull touch," and "full ROM all extremities."  (PageID.748; *see also* PageID.762 ("MMT 5/5 BLE with adequate dorsiflexion and plantar flexion ... Sensation to light touch intact throughout to the bilateral lower extremities.")).  Indeed, Ray reported that "he was recovering well until he was involved in a motor vehicle collision 6 days ago."  (PageID.761).  At any rate, he was "able to ambulate."  (*Id.*).

On July 11, 2019, Ray again denied any "numbness, tingling, weakness," and

physical exams found some pain in the right knee "with flexion" and "with extension," but otherwise indicated normal findings in both lower extremities in terms of stability and muscle strength/tone.  (PageID.797-99, 1023).  A week later on July 18, 2019, he reported "improvement in the right lower extremity symptoms," and denied "joint swelling, muscle weakness, neck stiffness, and numbness in extremity," and his SLR was "negative." (PageID.1030, 1033).

On September 21, 2019, Ray was found to have a positive SLR bilaterally in seated and supine positions and limited range of motion of the cervical and lumbar spine. (PageID.814).  But even then, he concurrently had "all other range of motion [] intact," his strength was "5/5 throughout," his "sensory function remain[ed] intact," and his reflexes were "present and symmetrical."  (*Id.*).  A physical exam one week later on September 27, 2019, found his extremities were "unremarkable" and his "[n]euro grossly intact with general or focal deficit."  (PageID.825).  In November 2019, Ray once again denied experiencing any "[t]ransient weakness" or "tremors," and he exhibited "normal strength" and "no focal neurological deficit."  An exam on November 4, 2019, also found Ray had "normal strength" and "no focal neurological deficit observed."  (PageID.835, 1531).  On January 24, 2020, Ray continued to deny any "Muscle weakness, Leg pain and Weakness," and a physical exam showed "Extremities unremarkable, ambulates without difficulty" and "Neuro grossly intact with general or focal deficit."  (PageID.1047, 1049).

Based on all of the above, substantial evidence supports the ALJ's finding that Ray did not have the requisite severity and duration of motor loss accompanied by sensory or reflex loss to meet or medically equal Listing 1.04(A).  Although Ray accuses the ALJ of

"ignor[ing] ... additional evidence of lower extremity weakness, sensory loss in the legs, and reflex loss in the legs," the "additional evidence" he cites fails to demonstrate that he could reasonably meet or equal the listing. (*See* ECF No. 16, PageID.1578 (citing to ECF No. 10, PageID.676, 726, 979)). First, his citation to a medical consultation note dated April 11, 2019, does not support his argument; to the contrary, this note reflects that Ray reported that he "does not have any weakness," and a physical exam found that his "upper and lower extremity motor and sensory examination is unremarkable" and SLR was "negative at this time." (ECF No. 10, PageID.676).

Next, Ray cites to an ED treatment note dated May 30, 2019, which indicates that an exam of his musculoskeletal system showed some "limited strength in the right lower extremity due to pain." But this same record still found "4+ out of 5 strength, both proximal and distal muscle groups" accompanied by "Normal ROM." (PageID.726). As noted above, *supra* at 12, the same finding was made less than a week later. (PageID.781).

Finally, Ray points to an ED treatment note dated May 22, 2019, in which a physical exam showed that Ray exhibited "tenderness," "unable to ambulate 2/2 pain, positive right straight leg test, ttp over lumbar spine, and right paraspinal tenderness," as well as "[d]ecreased sensation over medial distal right LE compared to left, decreased strength in right LE compared to left 2/2 pain." (PageID.979). But, as detailed above, subsequent exams later that same day indicate that Ray's sensory system was "grossly intact," his "power and tone look normal for age," his SLR was "negative [] bilaterally," his reflexes were "2+ symmetric throughout bilateral upper/lower extremities," his sensory function was "grossly intact to light touch in all extremities," he had "[n]ormal stance and steady

14

gait," and his musculoskeletal muscle bulk and tone were "normal."  (PageID.698-99, 705,

710; *see also* PageID.726, 781, 787, 789 (similar normal findings in the ensuing weeks)).

In short, it is well established that Ray "must do more than point to evidence on

which the ALJ could have based his finding to raise a 'substantial question' as to whether

he satisfied a listing.  Rather, a claimant must point to specific evidence that demonstrates

he reasonably could meet or equal every requirement of the listing."  *Pasiak v. Comm'r of*

*Soc. Sec.*, 800 F. App'x 301, 304-05 (6th Cir. 2019).  Based on all of the above, the Court

finds that the "intermittent findings cited by [Ray] do not satisfy [1.04(A)'s] listing criteria

and the ALJ's conclusions remain supported by substantial evidence."  *Davis*, 2019 WL

6208732, at *8.[5]

> 2.  *Ray Fails to Show that the ALJ Committed Reversible Error at Step*
>      *Two by Not Designating His Cervical Spine Impairment as Severe*

Ray next argues that the "ALJ's decision completely neglected [his] cervical spine

impairment despite an ample amount of evidence showing it is a severe impairment that

further restricts [his] RFC."  (ECF No. 16, PageID.1581).  He argues that the ALJ's failure

---

[5] To the extent Ray asserts that the "ALJ is deflecting her duty to make a determination on medical equivalence to some unknown medical source" when she stated that "no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment" (ECF No. 16, PageID.1578-79), he ignores the first part of the ALJ's statement which reflects her own determination: "The record does not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet *or equal* the criteria of any listed impairment ..."  (PageID.59) (emphasis added).  In any event, for the reasons discussed above, Ray did not carry his burden to point to specific evidence demonstrating that "he reasonably could meet or equal every requirement of the listing." *Pasiak*, 800 F. App'x at 305; *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 784 ("[M]edical equivalency is not a refuge for claimants who show only intermittent signs of impairment ...  The regulations make no provision [] for claimants whose condition is reasonably found to be sporadic or intermittent.").

to designate his cervical spine impairment as "severe" is not harmless because "had the ALJ properly assessed all the medical evidence, [his] cervical spine impairment should pass the *de minimis* hurdle standard and could reasonably be construed to limit [him] to a residual functional capacity which is more limited than what the ALJ assessed." (*Id.*, PageID.1582-83). The Commissioner responds that Ray's argument fails because "(1) there is no evidence of severe cervical spine impairment, and (2) even if the ALJ erred, any error is harmless." (ECF No. 19, PageID.1604). Again, the Court finds merit to the Commissioner's arguments.

At Step Two, the ALJ must consider whether a claimant's medically determinable impairment is a "severe [] impairment (*i.e.*, a condition that significantly limits his physical or mental ability to do basic work activities) that meets the duration requirement in § 404.1509 (longer or expected to be longer than a continuous period of at least 12 months), or a combination of impairments that is severe and meets the duration requirement." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 188 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii) and (c)). "Step two has been described as a *de minimis* hurdle; that is, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (quotations omitted); *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007). However, "an ALJ's failure to find an impairment severe is not reversible error if the ALJ found another impairment severe, and thus continued with the five-step evaluation process" while considering all of the claimant's impairments. *Lee v. Comm'r of Soc. Sec.*, No. 19-10337, 2020 WL 1139710, at *5 (E.D. Mich. Mar. 9, 2020)

16

(citing *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007)); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (holding that it was "legally irrelevant" that some of claimant's impairments were not deemed to be severe at Step Two where other impairments were deemed severe and the ALJ considered all of the claimants' impairments in the remaining steps of the sequential analysis).

Although a review of the ALJ's decision reflects no explicit discussion of Ray's cervical spine, that does not mean the ALJ did not consider the record evidence related to his cervical spine. *See Kornecky*, 167 F. App'x at 508 ("It is well settled that [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (quotation omitted); *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("The ALJ's failure to discuss [] observations does not indicate that they were not considered.  An ALJ need not discuss every piece of evidence in the record for his decision to stand.").  Rather, contrary to Ray's assertion that the ALJ "completely neglected [his] cervical spine impairment," the ALJ's decision reasonably reflects that she considered the evidence Ray contends should have established a "severe cervical spine impairment."

To start, Ray specifically points to two treatment notes in July 2019 and a consultative exam on September 2019.  First, he argues that a Hoover Urgent Care treatment note dated July 11, 2019, concerning a neck injury he sustained from a car accident a few days earlier, shows that he complained of "neck pain and stiffness" and "pain radiat[ing] into his arm," and that a concurrent exam noted "pain with extension, flexion, bending, and rotating the neck coupled with tenderness in the cervical spine."

(ECF No. 16, PageID.1581) (citing ECF No. 10, PageID.797, 799). Second, he contends that a treatment note from the Michigan Head & Spine Institute one week later on July 18, 2019, "corroborate[s]" his neck pain and "again note[s] limited range of motion in the cervical spine." (*Id.*) (citing ECF No. 10, PageID.1030, 1034). Finally, he relies on a consultative examination on September 21, 2019, during which he reported neck pain radiating to his shoulder and difficulty turning his head, and an exam found "limited flexion and rotation in the neck." (*Id.*) (citing ECF No. 10, PageID.812, 814).

While the foregoing certainly constitutes some evidence of a cervical spine impairment, the problem for Ray is that such evidence was expressly considered and noted by state agency physicians B.D. Choi, M.D. and Saadat Abbasi, M.D. in making their findings, and the ALJ discussed those two opinions in her decision, finding them to be "mostly persuasive."[6] (PageID.62-64). Specifically, under "Findings of Fact and Analysis of Evidence," Dr. Choi lists (1) "Hoover Urgent Care 7/19," noting "Recent MVA," "neck pain," and "decreased rom" of the spine, and (2) the consultative exam from "Great Lakes Medical Evaluations 9/19" noting "limited c-spine," "muscles spasms c-spine," and "rom limited c-spine." (PageID.134-35, 138). Upon reconsideration, Dr. Abbasi also lists under "Physical Updates" Ray's consultative exam on "9/21/19," noting "muscle spasms & TTP in Cspine" and "limited ROM of Cspine." (PageID.175, 180). Finally, in the explanation of their RFC findings, both Drs. Choi and Abbasi note "neck pain" and "exam limited

---

[6] Ray does not challenge the ALJ's evaluation of Dr. Choi's and Dr. Abbasi's opinions. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (undeveloped claims are waived).

ROM of neck and back." (PageID.139, 179). Because the ALJ specifically reviewed and determined that the "prior administrative medical findings from Drs. Choi [and] Abbasi" are "mostly persuasive because they are generally consistent with and supported by the evidence available at the time they were authored" (PageID.64), it can reasonably be inferred that in assessing the state agency physicians' RFC findings, the ALJ considered such evidence of pain and limited range of motion in Ray's neck and/or cervical spine. Moreover, the ALJ herself expressly discussed the consultative examination in September 2019, stating in part that "a consultative medical examiner noted ... limited range of motion in his spine." (PageID.62). Having considered this evidence, any error by the ALJ in not finding Ray's cervical spine impairment to be severe was harmless. *Lee*, 2020 WL 1139710, at *5; *Anthony*, 266 F. App'x at 457.

Ray next points to his numerous physical therapy treatment notes from August 1, 2019, through June 1, 2020, for "pain in his neck that radiated into his right arm," and argues that "[t]hroughout these visits, [he] was diagnosed with cervicalgia, cervical radiculopathy, and pain in the right shoulder." (ECF No. 16, PageID.1582 (citing PageID.1401, 1403, 1156)). But, as the Commissioner argues, a diagnosis by a physical therapist is not objective medical evidence from an acceptable medical source, *see* 20 C.F.R § 404.1521; 20 C.F.R. § 404.1502(a) (defining "acceptable medical source"), and Ray neither disputes this argument nor argues that he was diagnosed by a physician or any other acceptable medical source. (ECF No. 19, PageID.1606). In any event, as with the state agency physicians' opinions, the ALJ's explicit discussion of and citation to Ray's physical therapy sessions several times throughout her decision reflects that she reviewed

and considered the findings documented throughout his physical therapy treatment notes.

For example, the ALJ specifically noted that Ray "has been attending physical therapy since August 2019" and "began an extended course of physical therapy in August 2019." (PageID.61-62).  The ALJ then stated that after Ray's consultative exam in September 2019 and Dr. Choi's findings in October 2019, Ray "continued to make progress with physical therapy afterwards." (PageID.62).  The ALJ discussed how "[i]n January 2020, [Ray] reported a progressing ability to do activities of daily living and manage his pain at physical therapy," how he "continued to achieve good functional improvement through physical therapy and he had met most of his goals by March 2020," and how he "subsequently returned to physical therapy in April 2020 as he wanted to do more with upgrading his capacity to stand or exercise." (PageID.63).  The ALJ also determined that, while Ray's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record, noting that his "most recent treatment reports also show that he has continued to achieve good functional improvement to meet most of his goals with physical therapy," and so "his impairments can be adequately accommodated" by the ALJ's RFC finding.  (PageID.63).[7]  And again, the ALJ concluded that the findings of Drs. Choi and Abbasi – both of whom expressly reviewed and noted evidence concerning Ray's

---

[7] Ray does not challenge the ALJ's assessment of his subjective complaints.  *See Kennedy*, 87 F. App'x at 466 (undeveloped claims are waived); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("an ALJ is not required to accept a claimant's subjective complaints").

cervical spine – were mostly persuasive, "although the updated record received at the hearing level *documents further functional improvement with physical therapy* that would allow frequent balancing and some potential issues with medication side effects to preclude the use of ladders, ropes, or scaffolds." (PageID.64) (emphasis added).[8]

In short, even if Ray's cervical spine issues could be considered a "severe impairment," Ray fails to show any reversible error because the ALJ reviewed and considered evidence related to his cervical spine and the associated symptoms/effects, such as pain and limited range of motion in his neck, in assessing the RFC. *See Anthony*, 266 F. App'x at 457.[9]

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's

---

[8] To the extent Ray summarily argues that "neck pain that spreads into the arms as well as a diminished ability to turn the head could prevent someone from performing even sedentary work had the limitations been incorporated into the RFC," he fails to carry his burden of specifically identifying and proving the existence of functional limitations the ALJ should have assessed. *Lee v. Comm'r of Soc. Sec.*, No. 19-10337, 2020 WL 1139710, at *6 (E.D. Mich. Mar. 9, 2020) (stating the claimant "bears the burden of proving the existence and severity of limitations caused by h[is] impairments" and "that he has a more restrictive RFC than that assessed by the ALJ") (citing *Jones*, 336 F.3d at 474, and *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)).

[9] Moreover, substantial evidence supports the ALJ's RFC finding. For instance, as it relates to the cervical spine, the record regularly contains objective medical evidence of normal findings on exam of the neck throughout the relevant period. (*See, e.g.*, PageID.1535 ("Normal" neck exam in August 2019); PageID.835 (neck "supple without diminished range of motion" in November 2019); PageID.1531 ("Normal" neck findings); PageID.1083 ("moves neck easily" in December 2019); PageID.1526 ("Normal range of motion" in neck in February 2020)). Ray also does not challenge the ALJ's finding mostly persuasive Dr. Choi's and Dr. Abbasi's opinions, who both accounted for his neck pain and limited range of motion, but nonetheless assessed RFCs that are virtually identical to the ALJ's own RFC finding. Consequently, Ray's cursory argument that the ALJ "never asked the VE questions about cervical spine restrictions" also lacks merit. *See Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

Motion for Summary Judgment **(ECF No. 19)** be **GRANTED**, Ray's Motion for Summary

Judgment **(ECF No. 16)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: May 24, 2022                          s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation,

any party may serve and file specific written objections to the proposed findings and

recommendations set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D.

Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further

right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431

F.3d 976, 984 (6th Cir. 2005).   Only specific objections to this Report and

Recommendation will be preserved for the Court's appellate review; raising some

objections but not others will not preserve all objections a party may have.  *See Smith v.*

*Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also*

*Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections

must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served

with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should

be concise, and should address specifically, and in the same order raised, each issue

presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 24, 2022.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager